## Freeman v. Ajax Foundry Products, Inc.

*Robert E. Wachs* and *Louis Goffman*, of *Wolf, Block, Schorr & Solis-Cohen*, for plaintiffs.

*Nathan L. Posner*, of *Fox, Rothschild, O'Brien & Frankel*, for defendants.

GRIFFITHS, J., August 10, 1959.—This matter came before the court on the following two interrelated petitions:

(a) Plaintiffs' petition to modify and correct, or vacate arbitration award;

(b) Defendants' petition to strike plaintiffs' petition.

A summary of the several contracts giving rise to the present litigation is as follows:

Plaintiffs, Walter Freeman, Walter Freeman Co., Inc., and Mervin Hurwitz, hereinafter referred to as Freeman, entered into a written agreement executed in 1954 wherein defendants, Ajax Foundry Products, Inc., and Leon Barrett and Edmond Barrett, t/a Acorn Metal Products, a division of Ajax Foundry Products, Inc., hereinafter referred to as Ajax, were given the exclusive right to manufacture and sell certain electric swivels, on which Freeman owned patents, in return for which they agreed to pay Freeman royalties on all sales of the said swivel.

In 1955, by written agreement Ajax made Freeman its exclusive sales representative for the sale of the swivels on a commission basis. Both of the above agreements contained provisions for arbitrating disputes through the American Arbitration Association, which are as follows:

"11. *Arbitration*

"(a) Any dispute, claim, question or difference arising out of or relating to this Agreement shall be submitted to arbitration upon the initiative of either

party to this Agreement upon notice to the other party under the Industrial Arbitration Rules then obtaining of the American Arbitration Association, and the parties agree to abide by and perform the award": 1954 contract.

"11. *Arbitration*

"Any controversy or claim arising out of, or relating to, this Agreement, or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof": 1955 contract.

In 1958 a dispute arose under the agreements. Freeman initiated arbitration proceedings and on October 28, 1958, an award was rendered favorable to Ajax, and thereafter Freeman filed its petition to vacate or modify and Ajax, its petition to strike Freeman's petition. It was from the order of the court in dismissing Freeman's petition that an appeal has been taken.

Freeman based its request for a modification of the arbitration on the assumption that the Arbitration Act of 1927 is applicable to the contracts in question, and their request in the alternative to vacate the award, on the assumption the arbitrators exceeded the powers given them under the terms of the contracts.

We will discuss these requests separately.

Regardless of the merits of the allegations contained in Freeman's petition for a modification of the award, there can be no judicial review from an award of the arbitrators, with certain exceptions discussed hereinafter, unless the Arbitration Act of April 25, 1927, P. L. 381, 5 PS §161 et seq., is applicable to the contracts.

In Pennsylvania there is recognized common law arbitration as well as that conducted pursuant to the above cited statute. Thus in Wark & Company v. Twelfth and Sansom Corporation, 378 Pa. 578 (1954), a case involving a dispute over the performance of a certain building contract, the court stated on page 583:

"The case basically involves a common law arbitration. Such proceedings have not been displaced by the Arbitration Act of April 25, 1927, P. L. 381, 5 PS §161 et seq.; see Goldstein v. International Ladies' Garment Workers' Union, 328 Pa. 385, 389 . . . The defendant freely admits that the dispute over the building contract was voluntarily submitted to the arbitrators for their determination in accordance with the rules of the American Arbitration Association; that the arbitrators conducted hearings on the merits of the controversy; and that a majority of the arbitrators (as permitted by Rule 27 of the Arbitration Association) rendered an award for the plaintiff which has not been paid."

And in Hartmann Coal Mining Co. v. Hoke, 157 F. Supp. 313, 315 (E. D. Pa. 1957), the court stated on this point:

"The Act of 1927 is remedial only; proceedings under it are cumulative and nonexclusive. The Act did not do away with the right to bring suit to recover an arbitration award. *Isaac v. Donegal & Conoy Mutual Fire Ins. Co.*, 1930, 301 Pa. 351, 152 A. 95; *Goldstein v. International*, etc. 1938, 328 Pa. 385, 394, 196 A. 43; *Sukonik v. Shapiro*, 1939, 333 Pa. 289, 5 A. 2d 108; *Lowengrup v. Meislin*, 1954, 376 Pa. 463, 103 A. 2d 405."

The scope of judicial review in common law arbitration is limited to situations wherein there has been a denial of a proper hearing, misconduct or some other irregularity on the part of the arbitrators.

This rule of law is succinctly set forth in Reading Tube Corporation v. Steel Workers Federation and Reading Tube Local, 173 Pa. Superior Ct. 274, 279 (1953). There the court stated:

"It should be noted that the Arbitration Act of 1927 did not displace arbitration under the common law: Isaac et al. v. D. & C. Mut. F. Ins. Co., 301 Pa. 351, 152 A. 95; Goldstein et al. v. International Ladies Garment Workers Union, 328 Pa. 385, 196 A. 43; Philadelphia Housing Authority v. Turner Const. Co., 343 Pa. 512, 23 A. 2d 426; Rosenbaum et al. v. Drucker, et al. 346 Pa. 434, 31 A. 2d 117. Under the common law rules governing arbitration, an award of arbitrators is conclusive. *The general rule is that the award is binding unless it can be shown by clear, precise and indubitable evidence that the parties were not given a hearing, or that there was fraud, misconduct, corruption or some other irregularity on the part of the arbitrators which caused them to render an unjust, inequitable, and unconscionable award. Unless they are restricted by the submission, the arbitrators are the final judges of both law and fact and their award will not be disturbed for a mistake of either;* Goldstein et al. v. International Ladies Garment Workers Union, 328 Pa. 385, 196 A. 43; Philadelphia Housing Authority v. Turner Const. Co., 343 Pa. 512, 23 A. 2d 426; McDevitt v. McDevitt, 365 Pa. 18, 73 A. 2d 394; Electric Power Const. Co. v. Allen, Lane & Scott, Inc., 367 Pa. 319, 80 A. 2d 799; Mack Mfg. Corp. v. International Union, etc., 368 Pa. 37, 81 A. 2d 562; see 11 Standard Pennsylvania Practice pp. 486, 504." (Italics supplied.) See also Coopersmith v. Rose, 81 D. & C. 356 (1951) ; Technical Employees v. United States Steel Company, 88 D. & C. 464 (1954).

On the other hand the scope of review under the Arbitration Act of 1927 is set forth in sections 10 and 11 thereof and includes the following:

"In either of the following cases the court shall make an order vacating the award upon the application of any party to the arbitration:

"(a) Where the award was procured by corruption, fraud, or undue means.

"(b) Where there was evident partiality or corruption on the part of the arbitrators, or any of them.

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or any other misbehavior by which the rights of any party have been prejudiced.

"(d) Where the arbitrators exceeded their powers or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made.

"Where an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators": Section 10, 5 PS §170.

"In either of the following cases the court shall make an order modifying or correcting the award upon the application of any party to the arbitration:

"(a) Where there was an evident material miscalculation of figures, or an evident material mistake in the description of any person, thing, or property referred to in the award.

"(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted.

"(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

"(d) Where the award is against the law, and is such that had it been a verdict of the jury the court

would have entered different or other judgment notwithstanding the verdict.

"The court may modify and correct the award or resubmit the matter to the arbitrators": Section 11, 5 PS §171.

It was therefore necessary to determine whether the arbitration held in the instant case was under the Act of 1927 or at common law. We found it to be at common law.

The rule for determining this question is set forth in Rosenbaum v. Drucker, 346 Pa. 434, 436 (1939). There the arbitrators were required to determine who were members of a certain church. The faction that lost sought to overturn the award by raising numerous objections and exceptions. The court stated on page 436:

"Appellants protest that the arbitration award was signed by but two of the three named arbitrators. We agree that the procedure was at common law and not under the Arbitration Act of April 25, 1927, P. L. 381, 5 PS §161. In Sukonik v. Shapiro, 333 Pa. 289, we held that this statute did not abrogate common law arbitration, but provides a more effective remedy which is cumulative, not exclusive. *As neither side attempted, in any particular to follow the Arbitration Act it is manifest that the award of the arbitrators was a common law award.*" (Italics supplied.)

In Hartman Coal Mining Co. v. Hoke, supra, the court stated on this point on page 315:

"There is nothing in the record to indicate that the parties intended that arbitration was to proceed in conformity with the Act of 1927. We must assume, in the absence of evidence to the contrary, that the arbitration award was one at common law."

And again in Capecci v. Capecci, Inc., 11 D. & C. 2d 459 (1957) aff. per cur. 392 Pa. 32 (1958), the court stated on page 462:

"Where neither of the parties to an agreement of arbitration attempt, in any particular, to follow the Arbitration Act, the award of the arbitrator will be considered a common law award: Rosenbaum v. Drucker, supra. *This is so even though the agreement is within the scope of the Arbitration Act.*" (Italics supplied.)

In the instant case the arbitration clauses in the contracts are lacking in any language that could be construed as evidence that the parties intended the Arbitration Act of 1927 to be incorporated therein. In like manner the record is devoid of evidence of either party's having attempted to follow the act, except of course Freeman's appeal from the award of the arbitrators which comes too late, for to hold otherwise would in fact do away with all common law arbitration.

Freeman urges, notwithstanding the above cited cases, that the proper rule of law is that there exists the presumption that all contracts executed after the passage of the Arbitration Act having arbitration clauses incorporate the terms of that act. They rely on J. M. Davis Company v. Shaler Township, 332 Pa. 134 (1938), which does contain broad language seemingly to support their position. There the lower court disqualified the arbitrator named in a construction contract between the parties and substituted another in his place. No timely exception was taken to this order but thereafter the township presented a petition to have the order vacated. In affirming the lower court's refusal to vacate the order under attack the court stated on page 138:

"Under the Arbitration Act of 1927 a written contract, except a contract for personal services, may include a provision to settle by arbitration a controversy thereafter arising out of such contract. The arbitration provided for in contracts made after that

act took effect must be proceeded with according to the terms of that statute: Pittsburgh Union Stock Yards Co. v. Pittsburgh Joint Stock Co., 309 Pa. 314, 163 A. 668. When the parties entered into the arbitration agreement now before us they ipso facto embodied in that agreement all of the provisions of the Arbitration Act."

However, in that case there was no *contractual* provision for replacing the disqualified arbitrator; therefore it would have been impossible to proceed with arbitration unless appropriate provisions of the Arbitration Act were followed.

Thus in Sukonik v. Shapiro, 333 Pa. 289 (1939), the court stated on page 291 with reference to statutory law arbitration:

"Its basic feature is that after an award is made either party may apply to the court for an order confirming it, and upon such confirmation judgment is entered, there being no necessity, therefore, of bringing an independent action to recover on the award. Plaintiff did not follow the act in this respect, nor did the proceedings conform in various details to its provions. *Under such circumstances, which distinguish this case from J. M. Davis Co. v. Shaler Township, 332 Pa. 134, the reference to arbitration must be regarded as having been made under the common law.*" (Italics supplied.)

Seaboard Surety Company v. Commonwealth, 345 Pa. 147, 150 (1942), contains the following language to the effect that a presumption in favor of incorporating the terms of the Arbitration Act applies only to contracts of the Commonwealth or its agencies:

"The sole question for our determination is whether the Act of 1927, which is not mentioned in the written contract here involved, governs the arbitration therein provided for. This question must be answered in the affirmative, for section 16 of that Act provides: 'The

provisions of this act *shall* apply to any written contract to which the Commonwealth of Pennsylvania, or any agency or subdivision thereof, or any municipal corporation or political division of the Commonwealth shall be a party.' (Italics added.) In interpreting this portion of the statute, we said, speaking through Chief Justice Schaffer, in *Phila. Hous. Auth. v. Turner Const. Co.*, 343 Pa. 512, 518-9 (which decision was not rendered until almost six months after the learned court below entered its order in the instant case) : 'With this legislative declaration in view, it is impossible to conclude that the law-making body did not intend that all arbitrations provided for in contracts with the Commonwealth or its agencies should be under the act. . . .' "

In light of the foregoing we determined the arbitration in the instant case to be at common law and that Freeman is entitled only to such judicial review as set forth in the cases here cited. Consequently we discharged his petition to modify and correct the award.

Freeman's alternate prayer for relief, that the award be vacated, is equally without merit and was also discharged.

The arbitrators admittedly considered the only problem presented to them and thereafter made their award. There is no allegation of corruption or misconduct on their part but only plaintiffs' conclusion of law that the award in fact constituted a modification of the terms of the contracts. Even if this were true, Freeman cannot prevail for it would constitute no more than an error of fact or law, and consequently is not applicable. See Reading Tube Corporation v. Steel Workers Federation and Reading Tube Local, supra.

In light of the above action of the court, defendants' rule to strike was rendered moot and therefore dismissed.

*Final Order*

Plaintiffs' rule to show cause why arbitration award should not be modified, etc., discharged.

Eo die, defendants' rule to show cause why plaintiffs' rule should not be stricken, dismissed under decision on plaintiffs' rule.